# UNITED STATES DISTRICT COURT

for the

Western District of Wisconsin

| | | |
|---|---|---|
| **ANNIE CERNOHOUS,** | ) | |
| Individually, | ) | |
| Plaintiff, | ) | |
| | ) | |
| **-v-** | ) | **Civil Action No. 22-719** |
| | ) | |
| **ST. CROIX COUNTY,** | ) | |
| **DINA WILLIAMS,** | ) | |
| In her individual and official capacities, | ) | |
| **MICHELLE LECCIA,** | ) | |
| In her individual and official capacities, | ) | |
| **SUSAN JOHNSON,** | ) | |
| In her individual and official capacities | ) | |
| **TERESA BAIER,** | ) | |
| In her individual and official capacities, | ) | |
| Defendants. | ) | |

## COMPLAINT AND REQUEST FOR INJUNCTION

## NATURE OF ACTION

1. This is an action under the Fourth and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § § 1983 and 1988 arising out of the unlawful unreasonable seizure of plaintiff's children from her care and custody and the plaintiff being prohibited from contact with her children thereafter. Plaintiff is the voluntary parent of a Wisconsin State Chapter 48 juvenile case, commonly known as a CHIPS action. The State of Wisconsin has statutes that afford parents under Chapter 48 juvenile case dispositional orders rights and due process. Where a parent voluntarily enters into a CHIPS case for their children, they do so with the promise of the safeguards to abuse of power afforded through state statutes. Specifically, Wisconsin State Statute §48.357(1)(am)(c) requires that the person issuing a Notice to Change Placement file notice with the circuit court on the same day that the notice is issued; Wisconsin State Statute §48.357(1)(am)2 entitles a parent to a hearing prior to a change in placement where that parent objects to changing placement; Wisconsin State Statute §48.357(2) restricts emergency changes of placement to limited circumstances in which there is in fact an emergency; Wisconsin State Statute §48.25(6) and 813.122 set forth due process for a parent accused of conduct warranting prohibited contact between them and their children. Wisconsin State Statute §48.25(6) and 813.122 provide parties who wish to restrict contact between a parent and their children civil procedure by which to seek and obtain such an order. On December 10, 2022, a Saturday, Defendant Dina Williams issued and enforced a Notice to Change Placement where she failed to file it with the court on the same day (Wisconsin State Statute §48.357(1)(am)(c)); failed to substantiate

the presence of an emergency in the narrative with the Notice; where a hearing was scheduled and pending for her motion to change placement, to which Ms. Cernohous objected; and where Ms. Cernohous had not yet had the hearing to which she was entitled prior to changing placement. Thereafter, Ms. Cernohous was denied communication with her children due to prohibitions put in place by Defendant Dina Williams. Ms. Cernohous was denied her 14th Amendment Right to Due Process with 1) The removal of her children without the hearing to which she was entitled by Wisconsin State statute and her Fourth Amendment right against unreasonable search and seizure; and 2) The prohibition against contact with her children without the opportunity to confront the accusations against her or input from the circuit court judge as Defendant Williams failed to bring a motion for a child abuse restraining order or motion to change the dispositional order to prohibit contact between Ms. Cernohous and her children. Ms. Cernohous was denied her Fourth Amendment right against unreasonable seizure when her children were taken from her care and custody contrary to Wisconsin State law and where the seizure of her children was warrantless and without exigent circumstances. The additional surrounding circumstances listed below substantiate the gross negligence, malice, evil intent, involved reckless or callous indifference to Plaintiff's clearly established federal rights under the Fourth and 14th Amendments of the United States Constitution, where Defendants violated Plaintiff's clearly established Constitutional Rights under the color of law.

## JURISDICTION AND VENUE

2. Plaintiff brings this action pursuant to 42 U.S.C. §§1983 and 1988 for violations of civil rights under the Fourth and Fourteenth Amendments to the United States Constitution.

3. The case presents a federal question within the Court's jurisdiction under Article III, §2 of the United States Constitution and 28 U.S.C. § § 1331.

4. Venue is proper in this Court under 28 U.S.C. §1391 because the parties reside in this District, and because plaintiff's claims arose within the geographical boundaries of the Western District of Wisconsin within the meaning of 28 U.S.C. §1391(b).

## PARTIES

5. Plaintiff Annie Cernohous is an adult resident of Woodville, St. Croix County, Wisconsin, who at all times relevant resided at 1081 245th St., Woodville, Wisconsin 54028. Plaintiff is the mother of the children subject to the Chapter 48 juvenile cases in St. Croix County, Wisconsin.

6. Defendant St. Croix County, Wisconsin ("the County") is a county government that was created pursuant to the laws of the State of Wisconsin. The County's geographical area includes the municipalities in which the claims of this case took place, namely: Woodville, Baldwin, New Richmond, and Hudson. The County's address is: St. Croix County, 1101 Carmichael Road, Hudson, Wisconsin 54016. The County is being sued in its official capacity in this action.

7. Defendant Dina Williams is an adult resident of Pierce County, Wisconsin for all times relevant to this action. She works as a St. Croix County Children Services Social

Worker II. Her office address is 1752 Dorset Lane, New Richmond, Wisconsin 54017. Dina Williams is being sued in her individual and official capacities in this action.

8. Defendant Michelle Leccia is an adult resident of St. Croix County, Wisconsin for all times relevant to this action. She is a St. Croix County Children Services Administrator. Her office address is 1752 Dorset Lane, New Richmond, Wisconsin 54017. Michelle Leccia is being sued in her individual and official capacities in this action.

9. Susan Johnson is an adult resident of unknown. She is employed as an in-home family therapist for St. Croix County. Her office address is 1752 Dorset Lane, New Richmond, Wisconsin 54017. Susan Johnson is being sued in her individual and official capacities in this action.

10. Teresa Baier is an adult resident of St. Croix County, Wisconsin for all times relevant to this action. Her office address is 1008 Cardinal Circle, Hudson, Wisconsin 54016. Teresa Baier is being sued in her individual and official capacities in this action.

## **FACTS**

### **Background**

11. Plaintiff is a parent subject to voluntary child in need of protection (CHIPS) juvenile cases in the St. Croix County Probate Court.

12. Plaintiff grew up in and around Woodville, Wisconsin. She built her home with her own hands as a teenager with her family. She has taken her children to the same medical providers since birth. School personnel working with her children know her personally as a contemporary when she was in school. Plaintiff's reputation, ability to live in her community has been compromised by the actions of the Defendants in that

they have diminished Plaintiff's reputation in the community as a loving mother who cares for her children. Medical records of the children reflect a shift in tone and attitude when describing Plaintiff due to the actions of the Defendants which continue to empower the false narratives of her abuser.

13. Biological father and Plaintiff never married. Biological father coerced Plaintiff to change her name to create the appearance that they are married. Biological father is twice divorced.

14. Biological father so violently raped Plaintiff after the vaginal birth of their first child that she needed two surgeries and could no longer deliver children vaginally. All additional children were born by caesarian given the trauma imposed on Plaintiff by biological father. The last time biological father violently raped Plaintiff was in the early weeks of June 2021, while biological father was the subject of a no-contact order as a condition of probation issued by the circuit court judge at sentencing. He would show up to Plaintiff's home periodically, terrorize the family, and leave. The June 2021 rape resulted in pregnancy and a miscarriage.

15. Plaintiff attempted to report the June 2021 rape on July 31, 2021 at or around the time of miscarriage and was misled to believe by St. Croix County staff that because it had occurred more than 30 days prior, St. Croix County Sheriffs could not take the report. St. Croix County Sheriff's Department conducted an internal investigation for which Plaintiff cooperated in full. Plaintiff was not advised of the outcome of that investigation.

16. Plaintiff reported the June 2021 rape to the St. Croix County Sheriff's Department in detail in April of 2022. She provided intimate details and corroborating

evidence. She has been consistent in her description of voluminous incidents of domestic abuse, sexual assault, and child abuse spanning over thirteen years. Plaintiff has never been impeached and has spent a considerable amount of time being examined on the witness stand in open court. The St. Croix County District Attorney declined to file.

17. The last time biological father violently raped Plaintiff, L.R.C. (then 4) came into the room and held Plaintiff's hand as they both cried. Biological father would not stop raping Plaintiff upon child's entry. Prior to L.R.C.'s entry, biological father attempted to suffocate Plaintiff by holding her face into a firm foam pillow. Biological father left the bedroom door open with no regard for whether the other children witnessed or heard the assault. The assault left Plaintiff in pain and bloodied.

18. Starting in the Fall of 2020, biological father started weaponizing the St. Croix County Sheriff's Department, having Plaintiff arrested under false pretenses, which was especially scary for Plaintiff as it removed her from the home, leaving their children alone with biological father. The timing is significant because Fall 2020 is when Plaintiff started trying to leave her abuser. Fall 2020 is also when biological father threatened to kill the family. Biological father handwrote two separate narrative statements for the St. Croix County Sheriff's department on January 26, 2021 describing his modes of abuse and how he fabricates evidence, misleads law enforcement, and how his children lie for him to gain his favor. The handwritten statements were seemingly unprovoked as no new criminal actions were pending at the time. On January 19, 2021, biological father dismissed his St. Croix County family case filing in which he asked the court for sole custody of all of the children. Both appear to be grand gestures made to

regain control of Plaintiff in light of having just threatened and taken actions in furtherance of trying to kill the family in December 2020, the month prior. When Plaintiff continued to try to get away and biological father sat a 30-day probation hold in February of 2021, biological father increased his retaliatory efforts. He was sentenced on his new domestic abuse-related charged on May 19, 2021. He violently raped Plaintiff a couple weeks thereafter in the first 1-2 weeks of June.

19. December 2020, biological father prohibited contact between the children and the outside world, including Plaintiff. Plaintiff, with the assistance of a local domestic abuse resource and an intake worker for St. Croix County Children Services, secured temporary child abuse restraining orders. GAL Teresa Baier was appointed GAL. Plaintiff was not represented by counsel at the hearing and did not know how to enter evidence into the record. After the filing of the restraining order but before its service upon biological father, Plaintiff's children contacted her through a social media app on an old Android cell phone that they had found as they hid in a closet. Biological father could be heard raging in the background, stating that he was going to kill the children, wait for Plaintiff to come home and see what she made him do and then kill her too. Biological father told the children that Plaintiff did not love them enough to be there to save them. Plaintiff and her father, grandpa, arrived home after the service of the temporary child abuse restraining orders, which removed biological father from the home. Plaintiff and her father found all of the kids' clothing, including new clothes for the upcoming season with tags still affixed, bagged up and inside of the family’s dirty trash dumpster that they used for all of their waste. Plaintiff's youngest child was still in diapers. Plaintiff is on limited fixed income. All of the diapers in the house were in the

dumpster. Plaintiff's children explained while still under the duress, fear, and stress of the event that dad said they no longer needed their stuff because they were all going to die. No child abuse restraining order issued at hearing.

20. At the hearing for the issuance of child abuse restraining orders in December 2020, Guardian Ad Litem Attorney Teresa Baier did not present evidence. She advocated against the issuance of child abuse restraining orders. Attorney Baier emphasized to Plaintiff that children need both parents in their lives in explaining her lack of support for child abuse restraining orders.

21. Wisconsin State Statute §813.122(5)(b) presumes the parent who is subject to the child abuse restraining order is given reasonable visitation rights, "unless the judge finds that visitation would endanger the child's physical, mental or emotional health." GAL Attorney Teresa Baier's agenda and bias against child abuse restraining orders amounts to gross negligence and or conscious disregard for child endangerment or harm. A factfinder could reasonably conclude that GAL Teresa Baier was biased in her work on the current CHIPS cases in 2022 to a point of gross negligence or malice as a function of not wanting to admit her mistakes and or incompetence as guardian ad litem for Plaintiff's children two years prior in 2020.

22. Plaintiff agreed to the CHIPS filings given biological father's ongoing abusive behavior of the children, counter-parenting, and the detrimental effect that his behavior was having on the children, where a CHIPS filing promised an investigation and additional mental health resources for the children.

23. CHIPS cases began for all of Plaintiff's children on August 16, 2022. Dina Williams wrote the disposition report based upon an investigation that primarily targeted

Plaintiff, Plaintiff's home, and adopted biological father's false narratives as truth. Dina Williams largely ignored biological father, his conduct, and its effects on the children, choosing instead to solely focus on Plaintiff. Dina Williams made glaring material mis-statements as in the false assertion that biological father had been responsible for home schooling the children. Dina Williams made no effort to speak to material witnesses who could speak to biological father's history of death threats, abuse, and terrorizing the family separate and apart from Plaintiff. Dina Williams made no effort to interview material witnesses who could provide evidence regarding Plaintiff as a mother and home-school teacher of her children. Dina Williams failed to exercise due diligence in securing releases from the parents to review medical records for the children, and then relied heavily of biological father's false narratives regarding care of the children.

24. The probate court judge appointed Attorney Teresa Baier to serve as the guardian ad litem for Plaintiff's children on the CHIPS cases. Guardians ad litem enjoy quasi-judicial immunity, which applies to negligent performance of his or her duties as guardian ad litem.

25. Court issues a Dispositional Order orally on the CHIPS cases on Monday, October 31, 2022. Court issued the Dispositional Order in writing on November 18, 2022. That Dispositional Order was in effect on December 10, 2022.

26. From prior to the issuance of the CHIPS Dispositional Order, issued on October 31, 2022, through the morning of Saturday, December 10, 2022, Plaintiff had primary placement of her children, including all over-nights. Prior to December 10, 2022, since birth, the children had only ever known Plaintiff's home and their rooms and beds. Following the Dispositional Hearing of October 31, 2022, biological father had

unsupervised nightly video-phone calls with the children and unsupervised visitation throughout the week. Visitation between the children and biological father started Thursday, November 3, 2022. Visitation occurred twice a week from after school to 7:00 pm and from 8am-4pm on Saturdays.

27. Thursday, November 3, 2022, Plaintiff's children returned home from their first visit with their biological father. L.R.C. (6) returned home crying and hid in Plaintiff's room, refused to come out of the room to celebrate her sister's birthday or to eat cake. This is not usual behavior for L.R.C. and consistent with that which she does when scared or hurt. Plaintiff discovers what appears to be a rug burn or rash on the back of L.R.C.'s wrists and hands. L.R.C. initially says she does not remember what happened. Comment stands out to Plaintiff as L.R.C. does not know what happened but that she does not remember. L.R.C. commonly says she does not know when asked something she does not know. L.R.C. saying she does not remember that which happened that afternoon and early evening, within hours of whatever happened, stands out as unusual to Plaintiff.

28. Saturday, November 5, 2022 at or about 7:00 am, markings on L.R.C.'s wrists and hands appear to be bruises. As Plaintiff photograph's her hands, L.R.C. says, "That's what Dad did to send pictures to somebody."

29. Saturday, November 5, 2022, Plaintiff's children return from day visit with their biological father. A.D.C. (4) is very upset and screaming. Shortly after the return of the children, Plaintiff discovers a bloodied cut along the crease line of his left eye. Bruising visible in photograph taken with a flash.

30. Monday, November 7, 2022, Plaintiff through her attorney files to change the Dispositional Hearing, to end visitation with the children's biological father, and for reunification to take place only when therapists for the children and therapist for biological father agree that reunification is safe for the children.

31. Wednesday, November 9, 2022, GAL Teresa Baier, entrusted to advocate for the best interest of the children cites St. Croix County Children Services Child Protection not substantiating any abuse or neglect regarding the recent injuries to two of the children and announces that the children will continue with their unsupervised visits and unsupervised phone calls with their biological father.

32. November 13, 2022, Plaintiff through her attorney notifies Dina Williams through her attorney and GAL Teresa Baier with a letter to the court describing biological father's verbal representation to the children in his video-phone call after court on Friday, November 11, 2022: biological father told the children that they soon would no longer be living in their home, that mom would be losing her home soon and that they would be living with him. The children were scared and crying thereafter. Plaintiff's home has been the home of the children since birth. Biological father is suing Plaintiff to attempt to force the sale of her home. Biological father has a history of demanding Plaintiff choose between her home and her children through his attorney, including during periods of time in which Plaintiff was not represented by counsel.

**Notice of Issues**

33. On or about April 5, 2022, Plaintiff encountered L.R.C. who was crying, stating something to the extent of "Dad said mommy isn't going to be around for Easter," where the children were scheduled to spend Easter with Plaintiff and her family. L.R.C. was

scared, crying and asked Plaintiff about biological father's comments to her. Dina Williams knows or should of this incident based upon court filings. GAL Teresa Baier knows of this incident given her capacity of guardian ad litem on associated cases dealing with this evidence, court filings, and her physical presence in the courtroom during hearings regarding biological father's history of abusive behavior of the children, including unrefuted testimony regarding this incident.

34. At 10:51 AM CST on March 16, 2022, (14) of St. Croix County supervisors, including Chair Bob Long, received an email to their official @sccwi.gov email address putting them on notice of issues regarding potential bias among county employees and county service providers as it relates to domestic abuse survivors and the handling of abuse accusations by county employees and county service providers. The email referenced the book, <u>The Woman They Could Not Silence</u> by Kate Moore, a true story about the treatment of a woman in Illinois in the 1800s. The email drew the parallel between her story in the 1800s and the treatment of women, more specifically trauma survivors in St. Croix County in modern day.

35. On November 15, 2022, Michelle Leccia wrote an email to St. Croix County Corporation Counsel in which she makes comments suggesting the Plaintiff is being difficult and that mischaracterize the nature of Plaintiff's concerns regarding her children. Michelle Leccia summarizes and adds editorial comments to a chronology of communication between Plaintiff through her attorney and Dina Williams. St. Croix County was on notice of Plaintiff's experience and concerns, as St. Croix County through its Corporation Counsel Heather Amos was the direct or cc'd recipient of Plaintiff's communication, through her attorney, with Dina Williams.

36. As of at least December 10, 2022 and thereafter, Dina Williams, Michelle Leccia, Teresa Bair were all on notice of ongoing issues with children's behavior following interaction or visitation with biological father through contemporaneous emails that included them and St. Croix County Corporation Counsel Heather Amos at or about the time the issue arose. Dina Williams largely ignored the concerns but represented Plaintiff as difficult to the Court in her court filings. Plaintiff through her attorney sought guidance from Dina Williams as to how Dina Williams wanted Plaintiff to address ongoing issues with the department, namely Dina Williams and Susan Johnson. St. Croix County Corporation Counsel was on notice of these efforts as she was carbon copied on the email correspondences, plural. Dina Williams ignored Plaintiff's request for guidance, including unlawfully removing Plaintiff's children from her home in the days following.

37. St. Croix County, through Corporation Counsel Heather Amos, was on notice of apparent issues with training and concerns of bias within Children Services through numerous emails from Plaintiff through her attorney. St. Croix County had numerous opportunities to intervene, address the concerns, correct the problems and chose instead to do nothing and allow Dina Williams to continue in her work under the color of law as a St. Croix County Social Worker.

**Motion to Change Placement and Dispositional Order**

38. On November 28, 2022, Dina Williams motioned to Change Physical Placement and Revise the Dispositional Order to change placement of Plaintiff's children to the biological father.

39. On November 29, 2022, Plaintiff through her attorney objected to Dina William's proposed changes.

40. Wisconsin Statute §48.357(1)(am)2 entitles an objecting parent to a hearing prior to a change in placement.[1]

41. On November 30, 2022, the parties appeared before the circuit court judge for a status and to set a hearing based upon Plaintiff's objection to Dina William's pending motions. No arguments are made. No requests for immediate or emergency action are made. A hearing on Dina Williams' Motions to Change Placement and Revise the Dispositional Order to give biological father sole custody and Plaintiff supervised visitation was set for Tuesday and Wednesday, December 20 and 21, 2022.

42. On December 9, 2022, CASA files a report and recommendation on custody. It echoes the narratives of Dina Williams, which echo the false narratives of Plaintiff's abuser – biological father-- and recommends granting the biological father sole placement of the children. It does not comply with CASA protocols regarding meeting with the parents prior to issuing a report. It makes false assertions about Plaintiff's parenting based on inquiries of a grandparent who never claimed to have knowledge of that given parenting issue. The CASA report memorializes that biological father was cooking for the children during the visit with the CASA worker but fails to do the same for Plaintiff, where Plaintiff was also cooking for the children at the time of CASA's

[1] Defendants will likely argue that Wisconsin State Statute § 48.357(1)(am)2m shield them from liability on this claim. Wisconsin State Statute § 48.357(1)(am)2m states: "Changes in placement that were authorized in the dispositional order may be made immediately if notice is given as required under subd. 1. A hearing is not required for changes in placement authorized in the dispositional order except when an objection filed by a person who received notice alleges that new information is available that affects the advisability of the dispositional order." This statute, however, does not apply. The Dispositional Order orally issued on October 31, 2022, memorialized in writing on November 18, 2022, and in effect on December 10, 2022, did not authorize sole placement to biological father, it did not authorize restricting Plaintiff to supervised visitation and a prohibition against contact with the children.

visit to her home. Among biological father's false narratives is that Plaintiff does not feed her children, an issue that is not supported by the state of any of the children except one, D.E.C. who biological father has most heavily influenced as evidenced by repeating biological father's cruel hateful words towards Plaintiff, referring to Plaintiff using the words used by biological father as opposed to Plaintiff's name or that which her children call her; D.E.C. repeating biological father's false narratives about Plaintiff that he employs in court, that to which D.E.C. should have no knowledge unless biological father or someone connected to biological father is sharing with her; D.E.C. becoming hysterical when she learned that a sweatshirt gifted to her by biological father and that she loaned her sister was worn by another sister during a video-call with biological father, where D.E.C. had no problem with her sister wearing her sweatshirt all day leading up to the video-call with biological father and only went into hysterics, threatening suicide, becoming abusive in her words, and violent with Plaintiff and her siblings after D.E.C. saw that biological father could see that her sister was wearing the sweatshirt he had gifted to her. Worth noting, the CASA report filed on Friday, December 9, 2022 does not assert the presence of an emergency. It does not recommend *immediate* transfer of placement. It does not allege that Plaintiff is a danger to the children.

**December 10, 2022**

43. Saturday, December 10, 2022, a St. Croix County Social Worker and St. Croix County Deputy Sheriff arrived at Plaintiff's home and announced that the children would not be returned home from their day-visit with their biological father. Dina Williams cited "much collaboration" with Michelle Leccia, Teresa Bair, St. Croix County

Corporation Counsel Heather Amos, among others, as those in support of her December 10, 2022 Notice to Change Physical Placement immediately on a Saturday. Dina William does not cite consultation with or support from Susan Johnson, the county in-home therapist working with the children at issue, Plaintiff, and biological father. It is unclear whether the persons consulted worked on the morning of Saturday, December 10, 2022, which would be highly unusual, or whether their "much collaboration" occurred during the previous work week and Dina Williams just waited until the weekend to effectuate the Notice to Change Placement, preventing Plaintiff from accessing the probate court to attempt to prevent the violation of her Constitutional rights and leaving her waiting 48 long hours to be able to file with the court. Wisconsin Statute §48.357(1)(am)(c) requires the person who changes physical placement by notice -- as was the process used by Dina Williams -- to file that notice with the court on the day that it is issued. Waiting until the weekend meant that Plaintiff would be denied access to the judge for immediate remedy or to prevent the harm.

44. The Social Worker who arrived at Plaintiff's home on the morning of December 10, 2022 told Plaintiff that she was prohibited from contacting the children until Dina Williams contacts her about contact with the children on Monday. Dina Williams never contacted Plaintiff regarding contact with the children on Monday.

45. Saturday, December 10, 2022, Plaintiff through her attorney through an email to Dina Williams, which carbon copied St. Croix County Corporation Counsel Attorney Heather Amos at 12:20 pm CST, attempted to memorialize in writing the verbal representation from St. Croix County Children Services that Plaintiff is prohibited from contacting her children.

46. Sunday, December 11, 2022, Dina Williams through Corporation Counsel Attorney Heather Amos through an email at 3:38 pm CST memorialized the directive as "a request" and not a prohibition.

47. Sunday, December 11, 2022, Plaintiff delivered multiple outfits, snow gear and school supplies for her children while they are with their biological father.

48. Monday, December 11, 2022, Dina Williams through Corporation Counsel through an email at 10:14 AM CST expresses concern that the children do not have enough outfits for the week. At 11:11 AM CST, Corporation Counsel expresses concern that the children may have to repeat an outfit that week. That the department's priority is the possibility that the children may have to mix and match outfits, repeat an item of clothing, or that biological father does laundry speaks to the tone-deaf absurdity of Dina Williams and the County as reflected by the conduct and communication of Corporation Counsel Attorney Heather Amos. The priority is not reducing the trauma of abruptly ripping children away from their mother or facilitating contact but making sure outfits aren't repeated later that week.

49. Monday, December 11, 2022, Dina Williams does nothing to facilitate contact between Plaintiff and her children, where Plaintiff has always been in daily contact with her children, even in the rare circumstances in which she was away from her children. Dina Williams was on notice that biological father was in and out of the children's lives, particularly in 2021, leaving Plaintiff as the only consistent parent, her home as the only home they've ever known. Dina Williams appears to do nothing to reduce the trauma of abruptly removing them from their mom, Plaintiff.

50. Monday, December 11, 2022, Plaintiff awaits to see if she will get an emergency hearing and whether her children will be returned to her given the apparent unlawfulness of their removal.

51. Tuesday, December 13, 2022, 3:32 pm CST, Dina Williams finally addresses contact with the children and announces that Plaintiff can see the children in supervised visits at a community center at 3:30 pm CST on Wednesday and Thursday, December 14, 2022 and December 15, 2022.

52. Tuesday, December 14, 2022, St. Croix County In-Home Therapist Susan Johnson, contacts Plaintiff and verbally conveys that no, Plaintiff cannot pick up the children from school prior to the visits; no, Plaintiff cannot meet with her children with Susan in their home; no, Plaintiff cannot be with her children unsupervised. Susan Johnson describes her denials as "Dina's directives."

53. Tuesday, December 14, 2022, Plaintiff through her attorney "replies all" to Dina William's email regarding Plaintiff's contact with her children asking for memorialization of "Dina's directives" in writing, that which was presented to her verbally by Susan Johnson. As of December 16, 2022 at 6:00 PM CST, neither Dina Williams nor her Attorney, nor Susan Johnson who was cc'd on the email, responded to provide written memorialization of Dina William's verbal directives regarding Plaintiff's heavily restricted access to her children.

54. Wednesday, December 14, 2022, 2:30 pm CST, Dina Williams emailed Plaintiff notifying her of an injury to her child, L.R.C.'s eye that occurred the night prior. Dina Williams indicates that she learned of the injury that morning and offers no explanation for waiting until one hour before Plaintiff would see her children for the first time in

over four days. Dina Williams recklessly waits until close proximity to the appointment, where she knows that Plaintiff must travel to a neighboring municipality on rural winter roads, where she, Dina Williams, directed Plaintiff to meet with Susan Johnson at 3:15 PM CST. Dina Williams knows or should know that Plaintiff would have been preparing for the visit and in transit at the time of her email and very well may not receive her email notifying Plaintiff of the injury to her child. Dina Williams knows of the history of Plaintiff's children being injured while in the care of biological father; she knows that the children reported being hurt by biological father; she knows Plaintiff's ongoing fear that biological father is a threat to the health and safety of her children. Dina Williams recklessly withheld notice to Plaintiff of L.R.C.'s black eye, foreseeably leaving Plaintiff to learn of her child's injury upon seeing her for the first time in over four days. Ongoing false narratives of Dina Williams include that the children are having problems because Plaintiff can't just get over her trauma and be positive.[2] It is foreseeable that Plaintiff would have been concerned upon discovering her child's black eye, even more so when she got the explanation that scapegoats the youngest child. Plaintiff has a history of biological father scapegoating the youngest child for vandalism that biological father inflicted on her home and belongings, as well as previous injuries of the children. Dina Williams knows or should know that another child, V.E.C., had a black eye, that occurred in the presence of Plaintiff, where Plaintiff's experience was that biological father threw something at V.E.C.'s face and where biological father blamed another

[2] The source of this particular false narrative of Dina Williams is unknown, as Plaintiff makes a point to remain upbeat and positive with the children as it pertains to their biological father. Plaintiff works hard in therapy to ensure she is not placing her trauma on the shoulders of her children. Plaintiff's approach is why the children would often share contact from their biological father over the summer during a time in which such contact was in violation of the temporary restraining orders, because Plaintiff never led on that she takes issue with the children and their relationship with their father.

child. This is an example of Dina Williams being grossly negligent and lacking trauma-informed care of the persons over whom her color of law authority provides her great power. It is potentially an example of Dina Williams acting with actual malice if a trier of fact finds that she purposefully withheld material information in an effort to set-up Plaintiff for an emotional response in the presence of her children that Dina Williams could then use in furthering her unflattering narratives about Plaintiff in her court filings. A trier of fact could make such a finding based upon Dina Williams manipulating the timing of her imposition of her December 10, 2022 Notice to Change Placement, that which Plaintiff expects the evidence to show at trial.

55. Wednesday, December 14, 2022, Plaintiff's first supervised visit with the children since they were unlawfully removed from her care and custody. One or more child expressed wanting to be able to communicate with Plaintiff. St. Croix County In-Home Therapist Susan Johnson led the children to believe they are forbidden from having contact with their mom, Plaintiff. As of December 16, 2022, there are no court orders for no contact between Plaintiff and her children. There are no court findings that Plaintiff has ever abused or been a danger to her children. As of December 16, 2022, Plaintiff continues to be denied due process of formal accusations by way of a court filing, the ability to defend herself, and or opportunity for the circuit court judge to examine the evidence and issue an order regarding communication.

56. Wisconsin State Statute §48.25(6) and 813.122 set forth civil procedure for obtaining a child abuse restraining order within a CHIPS case. At no time as of December 16, 2022, has Dina Williams motioned the court for a child abuse restraining order to justify preventing contact between Plaintiff and her children. Dina Williams

continues to effectuate the functional equivalent of a child abuse restraining order by leading the children to believe they are prohibited from speaking to their mother, enabling biological father in his refusal to facilitate contact between Plaintiff and her children, and pressuring Plaintiff not to contact her children as a "request." Again, Dina Williams and St. Croix County Corporation Counsel refuse to reduce Dina William's unlawful directives to writing, further denying Plaintiff's 14th Amendment right to due process.

**<u>Color of Law</u>**

57. At all times relevant, as alleged in paragraphs 22 through 56, defendants were acting in concert with each other on behalf of the County under the color of state law in their official capacities.

**<u>Outrageous Conduct by Defendants</u>**

58. The actions taken by defendants against plaintiffs, as alleged in paragraphs 22 through 56, were outrageous and were motivated by evil intent or involved reckless or callous indifference to Plaintiff's clearly established federal rights under the Fourth and Fourteenth Amendments of the United State Constitution.

59. The unconstitutional actions of defendants, as alleged in paragraphs 22 through 56 have caused Plaintiff to suffer mental pain and suffering; mental injury; loss of personal privacy; severe emotional distress; anxiety; humiliation; stigma, loss of reputation; inconvenience; severe emotional distress; attorneys fees and costs in this action; and other damages.

## CLAIMS AND CAUSES OF ACTION

**FIRST CLAIM: VIOLATION OF THE FOURTH AND 14th AMENDMENTS USE OF UNREASONABLE SEIZURE BY REMOVING PLAINTIFF'S CHILDREN FROM HER CARE AND CUSTODY WITHOUT A WARRANT AND WITHOUT EXIGENT CIRCUMSTANCES, DENYING PLAINTIFF'S RIGHT TO A HEARING PRIOR TO CHANGING PLACEMENT.**

**(Plaintiff Annie Cernohous Against Defendants Williams, Leccia, Johnson, Baier, and the County)**

60. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs as if set forth in full.

61. The Fourth and Fourteenth Amendments of the United States Constitution protects persons against unreasonable seizures and guarantees individuals the fundamental right "to be secure in their persons . . . against unreasonable searches and seizures . . ." by government officials. Several courts have held that the removal of children from their home is a seizure implicating the Fourth Amendment. *Kovacic v. Cuyahoga County Dept. of Children and Fam.*, 809 F.Supp.2d 754, 771–75 (N.D. Oh. 2011), rev'd in part and aff'd in part, 606 F.3d 301 (6th Cir. 2010); *Siliven v. Indiana Dept. of Child Servs.*, 635 F.3d 921 (11th Cir. 2011); *Hernandez v. Foster*, 657 F.3d 463 (7th Cir. 2011); *O'Donnell v. Brown*, 335 F.Supp.2d 787 (W.D. Mich. 2004); *Gedrich v. Fairfax County Dept. of Fam. Servs.*, 282 F.Supp.2d 439 (E.D. Va. 2003); *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003); *Yuan v. Rivera*, 48 F. Supp.2d 335 (S.D.N.Y. 1999).

62. The government cannot remove someone's children from their care, custody, and home without a warrant or a valid exception to the warrant requirement.

63. Parents have a Constitutional right to parent their children. The U.S. Supreme Court has repeatedly held that parents have a fundamental right to make decisions as to the companionship, care, custody, and management of their children, which right is a protected liberty interest under the due process clause of the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 2060 (2000).

64. While parents subject to juvenile court "CHIPS" orders, temporarily (and potentially permanently) lose many of those fundamental rights, given the compelling government interest that allows for narrowly tailored laws that infringe on those fundamental parental rights, parents rely on the protections of state law and the United States Constitution as a check and balance to the colossal power of the state over their children. In Wisconsin, state statutes set forth the rules by which the government can remove children from a parent. The applicable guard rail statutes in this claim are Wisconsin State Statute §§48.357(2) and 48.357(1)(am)2.

65. Wisconsin State Statute §48.357(2) states, "If emergency conditions necessitate an immediate change in the placement of a child or expectant mother placed outside the home, the person or agency primarily responsible for implementing the dispositional order may remove the child or expectant mother to a new placement, whether or not authorized by the existing dispositional order, without the prior notice provided in sub. (1) (am) 1. or the consent required under sub. (1) (am) 2r."

66. Wisconsin State Statute §48.357(1)(am)2 states, "Except as provided in subd. 2r., any person receiving the notice under subd. 1. or notice of a specific placement under s. 48.355 (2) (b) 2., other than a court-appointed special advocate, may obtain a hearing on the matter by filing an objection with the court within 10 days after the notice is sent to

that person and filed with the court. Except as provided in subds. 2m. and 2r., if an objection is filed within 10 days after that notice is sent and filed with the court, ***the court shall hold a hearing prior to ordering any change in placement.***" (Emphasis added.)

67. Defendants will likely argue Wisconsin State Statute § 48.357(1)(am)2m as a defense, which states:

> "Changes in placement that were authorized in the dispositional order may be made immediately if notice is given as required under subd. 1. A hearing is not required for changes in placement authorized in the dispositional order except when an objection filed by a person who received notice alleges that new information is available that affects the advisability of the dispositional order."

However, the Dispositional Order issued orally on October 31, 2022, memorialized in writing on November 18, 2022, and in effect on December 10, 2022, does not allow for biological father to have sole custody, or to reduce Plaintiff's care and custody to no contact and minimal supervised visits. Paragraph 2 of the written Dispositional Order allows up to equal shared placement with biological father having 2-3 days per week and every other weekend. The December 10, 2022 change in placement was not authorized by the Dispositional Order in the CHIPS cases.

68. On December 10, 2022, under the color of law on behalf of the County of St. Croix, at the express direction of Dina Williams, with the knowledge and support of Teresa Baier and Michelle Leccia; a St. Croix County Sheriff and St. Croix County Social Worker seized Plaintiff's children from her custody in furtherance of a Notice of Change in Placement signed by Dina Williams and corresponding narrative that

purported to justify the Notice of Change in Placement but failed to establish an emergency, making the seizure unreasonable and not supported by law. Rather than wait 9 days for the hearing schedule on her motion to change placement, to which Plaintiff objected and was entitled a hearing, Dina Williams executed a scheme to sidestep Plaintiff's objection and right to a hearing. Using the stale false narratives of biological father, ignoring the lack of emergency alleged in a CASA report filed the day prior; disrespecting the probate court judge's judgment and case handling, having just appeared before his Honor the week prior, November 30, 2022; making no effort to petition the court for a child abuse restraining order, that which would be warranted were Dina Williams' assertions true; making no effort to seek an emergency order from the court, allowing for the input of the court and due process for Plaintiff, Dina Williams violated Plaintiff's clearly established rights under the Fourth and 14th Amendment of the United States Constitution. Prior to December 10, 2022, neither the District Attorney nor the Guardian Ad Litem filed any motions for emergency relief or for a child abuse restraining order.

69. In the narrative associated with the December 10, 2022 Notice to Change Placement, Dina Williams did not mention Susan Johnson as lending her support for the immediate seizure of the children. As the St. Croix County in-home mental health professional working closely with Plaintiff and Plaintiff's children, the lack of her support for Dina Williams' actions speaks to the egregiousness of Dina Williams' actions.

70. Defendant Johnson through her malice, gross negligence, and or bias in her work as a St. Croix County Therapist directly contributed to that which Defendant Williams

used as her basis for unlawful seizure of Plaintiff's children from her custody and care. Without Defendant Johnson's complicity with and echoing of biological father's, Plaintiff's abuser's false narratives, Defendant Williams would have lacked material assertions she needed and used as justification to remove the children from the Plaintiff.

71. The County, through its official custom, policy or practice of inadequately training, supervising, preparing and monitoring Dina Williams, was a moving force behind the unlawful, warrantless seizure of Plaintiff's children without any valid exception to the warrant requirement on December 10, 2022.

72. Defendants Williams, Leccia, Johnson, and Baier are liable both in their personal and official capacities to plaintiff for punitive damages plaintiff has suffered because of their actions in authorizing, directing, and conducting the unlawful seizure of Plaintiff's children, which was motivated by evil intent or involved reckless or callous indifference to Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution.

**SECOND CLAIM: VIOLATION OF THE 14th AMENDMENT UNREASONABLE DENIAL OF CONTACT WITH HER CHILDREN ABSENT DUE PROCESS**

**(Plaintiff Annie Cernohous Against Defendants Williams, Leccia, Johnson, Baier, and the County.)**

73. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs as if set forth in full.

74. Parents have a Constitutional right to parent their children. The U.S. Supreme Court has repeatedly held that parents have a fundamental right to make decisions as to

the companionship, care, custody, and management of their children, which right is a protected liberty interest under the due process clause of the Fourteenth Amendment. Troxel v. Granville, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 2060 (2000).

75. While parents subject to juvenile court "CHIPS" orders, temporarily (and potentially permanently) lose many of those fundamental rights, given the compelling government interest that allows for narrowly tailored laws that infringe on those fundamental parental rights, parents rely on the protections of state law as a check and balance to the colossal power of the state over their children. In Wisconsin, state statutes set forth the rules by which the government can remove children from a parent. The applicable guard rail statutes in this claim are Wisconsin State Statute §§ 48.25(6) and 813.122.

76. Wisconsin State Statute §48.25(6) states,

"If a proceeding is brought under s. 48.13, any party to or any governmental or social agency involved in the proceeding may petition the court to issue a temporary restraining order and injunction as provided in s. 813.122 or 813.125. The court exercising jurisdiction under this chapter shall follow the procedure under s. 813.122 or 813.125 except that the court may combine hearings authorized under s. 813.122 or 813.125 and this chapter, the petitioner for the temporary restraining order and injunction is not subject to the limitations under s. 813.122 (2) (a) or 813.125 (2) and no fee is required regarding the filing of the petition under s. 813.122 or 813.125."

77. Since December 10, 2022, Plaintiff has been denied contact with her children. The Social Worker who came to her house the morning of December 10, 2022 verbally admonished her that she is prohibited from contacting the children until further advised

by Dina Williams on Monday. When Plaintiff attempted to get that directive memorialized in writing through Dina Williams and St. Croix County Corporation Counsel, the only memorialized directive as of Sunday, December 11, 2022, was that it was “a request.” Nevertheless, Susan Johnson repeatedly leads the children to believe they are prohibited from contacting their mother and she is prohibited from contacting them. Dina Williams has likewise misled the children to believe they are prohibited from contact with their mother.

78. Dina Williams has failed to seek a court order authorizing a prohibition against contact between Plaintiff and her children, denying her the opportunity to confront the accusations against her, denying the probate court judge from providing input, denying Plaintiff’s clearly established due process rights under the 14th Amendment of the United States.

79. The County, through its official custom, policy or practice of inadequately training, supervising, preparing and monitoring Dina Williams, was a moving force behind her ongoing violation of Plaintiff’s clearly established due process rights under the 14th Amendment of the United States Constitution.

80. Defendants Williams, Leccia, Johnson, and Baier are liable both in their personal and official capacities to plaintiff for punitive damages plaintiff has suffered because of their actions in authorizing, directing, and conducting the denial of Plaintiff’s clearly established right to due process as it pertains to contact with her children, which was motivated by evil intent or involved reckless or callous indifference to Plaintiff’s clearly established rights under Fourteenth Amendments of the United States Constitution.

## JURY TRIAL DEMAND

Plantiff hereby requests a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues of liability, compensatory, nominal, equitable, punitive, and other damages.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully request that the Court find in her favor and against defendants, and that the Court grant the following relief:

A. Judgment in favor of Plaintiff against all Defendants on all of plaintiff's claims, as alleged above;

B. Judgment in favor of Plaintiff that Defendants, in their individual and official capacities, pay plaintiff damages for their physical and mental pain and suffering; mental injury; loss of personal privacy; fear; loss of safety; loss of security; severe emotional distress; anxiety; humiliation; stigma; loss of reputation; inconvenience; attorneys' fees and costs in this action; and other damages;

C. Judgment that the individual defendants pay plaintiff punitive damages;

D. Judgment that defendants pay plaintiff and her attorney her reasonable attorney's fees, costs, and expenses in this action, in accordance with 42 U.S.C. § 1988; and

E. Such other and further relief, including appropriate equitable relief to prevent further retaliation against plaintiff, as the Court deems appropriate and as may be requested by plaintiffs under the circumstances.

Dated this 16th day of December, 2022

Equal Justice Inc.

(Electronically signed Sarah S. Yacoub)

Sarah S. Yacoub
Attorney for Plaintiff
WI State Bar No. 110326
808 Carmichael Road #112
Hudson, Wisconsin 54016
Office: 612-305-8479
Email: sarahyacoub@equaljusticewi.org